ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **RAFAEL RIVERA TORRES**<br>RECURRENTE(S)<br><br>V.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br>RECURRIDA(S) | **KLRA202500269** | ***REVISIÓN DE DECISIÓN ADMINISTRATIVA***<br>procedente del<br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br><br>Caso Núm.:<br>ICG-1168-2024<br><br>Sobre:<br>Solicitud de Servicio<br>(Área Socio Penal) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

*Barresi Ramos*, juez ponente

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de febrero de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **RAFAEL RIVERA TORRES** (señor **RIVERA TORRES**) mediante *Recurso de Revisión* incoado el 29 de abril de 2025. En su escrito, nos solicita que revisemos la *Respuesta al Miembro de la Población Correccional* (*Respuesta*) decidida el 13 de diciembre de 2024 por la **DIVISIÓN DE REMEDIOS ADMINISTRATIVOS DEL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**.[2] La *Respuesta* manifiesta:

> "Se aneja con la Respuesta de Remedio Administrativo una copia fiel y exacta de la Respuesta emitida por el área concernida a su Solicitud de Remedio Administrativo".

La *Respuesta del Área Concernida/Superintendente* fechada el 12 de diciembre de 2024 articula:

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025 sobre designación de paneles en el Tribunal de Apelaciones.
[2] Este dictamen administrativo fue notificado el 20 de diciembre de 2024. Apéndice del *Recurso de Revisión*, págs. 2-3.

Número Identificador: SEN2026_____

"No es la primera vez que se orienta al confinado con relación con el mismo tema, tanto en entrevista de seguimiento y remedios administrativos. La Dra. [Jennifer] Crespo evaluó al confinado y [a pesar] de que necesita las terapias del SPEA decidió no dárselas según el resultado de la entrevista realizada por la Dra. González al confinado".

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

El señor **RIVERA TORRES,** quien se encuentra bajo la custodia del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR),** está cumpliendo pena en la Institución Correccional Guerrero en Aguadilla.

El 21 de noviembre de 2024, el señor **RIVERA TORRES** presentó una *Solicitud de Remedio Administrativo* ante la **DIVISIÓN DE REMEDIOS ADMINISTRATIVOS DEL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** a la cual se le asignó el número: **ICG-1168-2024**.[3] En esta, manifestó que la doctora Jennifer Crespo, terapista de SPEA y/o DEA, le dio de baja de los servicios por alegadamente no retener información y no comprender bien las pruebas suministradas. Ante ello, requirió que se le brindaran las razones por escrito del porque se le dio de baja.

El 13 de diciembre de 2024, se emitió la *Respuesta al Miembro de la Población Correccional* recurrida.

Insatisfecho, el 9 de enero de 2025, el señor **RIVERA TORRES** presentó una *Solicitud de Reconsideración.*[4] Alegó que se le están negando los servicios que el **DCR** está obligado a ofrecerle; y se le exige tomar y culminar las terapias para ser evaluado para el programa de desvió.

Más tarde, se decretó la *Respuesta de Reconsideración al Miembro de la Población Correccional* en la cual se acogió la petición de reconsideración. El 20 de marzo de 2025, se expidió la *Resolución* conteniendo las siguientes determinaciones de hechos:

1.       El 4 de noviembre de 2024, el recurrente radicó escrito de solicitud de remedio administrativo[.] En su escrito indicó que la Dra. Jennifer Crespo[,] terapista del SPEA, le había dado de baja de los

---

[3] Apéndice del *Recurso de Revisión*, pág. 1.
[4] *Íd.*, págs. 4-5.

servicios de terapias, por [alegadammente] no retener información y no comprender bien las pruebas suministradas. Indicó que es un abuso de discreción y una violación a sus derechos. Solicitó que se le brinden las razones por escrito del porque se le dio de baja de las terapias de SPEA, ya que necesita coger las terapias por la gravedad del delito y por que fue asignado por comité, como parte de su plan institucional y su plan de salida.

2.      El 21 de noviembre de 2024, el Sr. Henry Luna Bravo, Evaluador de la División de Remedios Administrativos de la oficina local de Aguadilla, recibe, enumera, codifica y firma el recibo de la solicitud de Remedio Administrativo.

3.      El 13 de diciembre de 2024[,] el Evaluador Sr. Henry Luna Bravo, recibe respuesta del área concernida, para que sea entregada al MPC Rafael Rivera Torres, en la cual la Técnica socio penal a cargo del caso la Sra. Mariel Cabán Morales, le expuso que no es la primera vez que se orienta al recurrente con relación al mismo tema, tanto en entrevistas de seguimiento y quejas de remedios administrativos. La dra. Jennifer Crespo evaluó al confinado y a pesar de que necesita las terapias de SPEA decidieron no dárselas según el resultado de la entrevista realizada por la Dra. González.

4.      El 26 de diciembre de 2024[,] el recurrente inconforme con la respuesta presentó Solicitud de Reconsideración indicando "que no est[á] conforme con la respuesta emitida por su técnica socio penal, solicita una revisión ya que establece que es un discrimen, que se le está negando los servicios y que quiere tomar y culminar las terapias de la división.

5.      Recibida la Solicitud de Reconsideración y acogida, por la Coordinadora Regional, Melissa Ruiz Sepúlveda, al ser acogida la solicitud de reconsideración, tendré (30) días laborales para emitir Resolución de Reconsideración.

[...]

[...] la Psicóloga le recomendó, tratamiento individual por salud correccional dirigido a trabajar con la problemática que le trae al sistema y se recomendó que sus progresos sean supervisados por su técnica socio penal.

Además, la técnica socio penal a cargo del caso le escribió al jefe del Programa de evaluación y asesoramiento explicando la situación del recurrente y alguna solución al problema. Se encuentra en espera que le notifiquen sobre el caso del recurrente.

DISPOSICIÓN

A base de la información expuesta en este documento determinamos confirmar y modificar la respuesta recibida por parte del Evaluador Henry Luna Bravo de la Institución Guerrero, Aguadilla.[5]

[...]

En desacuerdo, el 29 de abril de 2025, el señor **RIVERA TORRES** acudió mediante su *Recurso de Revisión* ante este foro intermedio señalando el(los) siguiente(s) error(es):

Primer error: Cometió error el Departamento de Corrección y Rehabilitación y su Programa de Remedios Administrativos al confirmar la respuesta emitida en el caso ICG-1168-2024 de fecha 20 de marzo de 2024 mediante Resolución notificada el 03 de abril de 2025.

Segundo error: Cometió error Departamento de Corrección y Rehabilitación al interrumpir y negar el servicio y tratamiento de la

---

[5] Dicha decisión administrativa fue notificada el 3 de abril de 2025. Apéndice del *Recurso de Revisión*, págs. 7-8.

Sección Programa Evaluación y Asesoramiento "SPEA" y/o vivir sin violencia conforme a derecho.

Tercer error: Cometió error el Programa Evaluación y Asesoramiento "SPEA" a través de la Dra. Jennifer Crespo Rodríguez Psicóloga Clínica en comenzar y dar de baja al recurrente del tratamiento por éste no saber leer y escribir, discriminando y prejuiciandolo por ello sabiendo éste (recurrente) saber leer y escribir, aunque con bajo grado.

Cuarto error: Cometió error el Programa y Servicios del Departamento de Corrección y Rehabilitación al "posponer" su determinación de "pase extendido con monitoreo electrónico" por las razones expuestas siendo el DCR quien niega e impide los servicios.

El 28 de mayo de 2025, pronunciamos *Resolución* requiriéndole al señor **RIVERA TORRES** cumplimentar la *Solicitud para Declaración de Indigencia;* y concediéndole al **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** un término de treinta (30) días para presentar su posición sobre el recurso. Después, el 3 de junio de 2025, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** presentó su *Escrito en Cumplimiento de Resolución.*

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *REVISIÓN ADMINISTRATIVA*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[6] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[7]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[8] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es

---

[6] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[7] 3 LPRA § 9671.
[8] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).

la *razonabilidad* de la actuación de la agencia.[9] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[10]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[11] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[12] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[13]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[14] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en

---

[9] *Otero v. Toyota*, 163 DPR 716 (2005).
[10] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[11] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016)*; García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[12] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[13] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[14] *Torres Rivera v. Policía de PR, supra*.

*evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[15]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[16] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[17] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[18] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[19] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[20] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[21]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[22] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello, que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[23]

---

[15] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[16] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[17] *Otero v. Toyota, supra*, pág. 728.
[18] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[19] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[20] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[21] *Íd.*
[22] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[23] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[24] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[25] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[26]

### - B – *PROGRAMA APRENDIENDO A VIVIR SIN VIOLENCIA*

El 21 de noviembre de 2011, se aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011* (*Plan*). Mediante dicho *Plan*, se decretó "como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad".[27]

Entre las facultades, funciones y deberes del secretario, está "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios".[28]

En conformidad con estas facultades delegadas al secretario, se creó el Negociado de Evaluación y Asesoramiento (NEA), ahora Negociado de

---

[24] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[25] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.
[26] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.
[27] 3 LPRA Ap. XVIII Art. 2.
[28] 3 LPRA XVIII Ap. Art. 7 (aa).

Rehabilitación y Tratamiento (NRT), para ofrecer los tratamientos que hagan posible la rehabilitación mediante programas que respondan a las necesidades particulares de la población correccional de Puerto Rico. Así, se adoptó el *Manual de Normas y Procedimientos del Programa Aprendiendo a Vivir sin Violencia* (*Manual de Normas y Procedimientos*) que aún permanece vigente.

El *Programa Aprendiendo a Vivir sin Violencia* (*Programa*) provee servicios de tratamiento psicoeducativo a confinados(as) que cumplen delitos de maltrato físico y/o sexual, asesinato, homicidio y otros delitos violentos y que además presentan historial de adicción al alcohol y/o drogas.[29] El *Programa* consta de tres (3) fases en las cuales asistirán a modelos psicoeducativos, dinámicas grupales, realizarán tareas y recibirán tratamiento individual, familiar, de pareja según amerite el caso.[30] Durante la fase de evaluación se hará "una entrevista a [todos los] clientes, se le administrará la Prueba de Matrices Progresivas de Rave Form Standard o Prueba de Cernimiento Intelectual Barsit y el Inventario Multifásico de la Personalidad (MMPI-2)".[31]

Los criterios de selección para la participación en el programa son: a) cumplan sentencia por los delitos relacionados a uso y abuso de alcohol y/o drogas; b) clasificados en custodia mínima o mediana; c) ausencia de historial psiquiátrico; d) mínimo de sentencia un año, máximo hasta quince (15) años y; e) elegibles para Libertad Bajo Palabra o cualquier otro privilegio no antes de un año.[32] Así, el Negociado de Rehabilitación y Tratamiento ha suscito un folleto para orientar a los participantes sobre el *Programa*.

### - C - *REGLAMENTO 8583*

El 4 de mayo de 2015, se aprobó el *Reglamento 8583* conocido como el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional (Reglamento)*. El objetivo de dicho

---

[29] *Manual de Normas y Procedimientos del Programa Aprendiendo a Vivir sin Violencia,* Rev. 1996, pág. 2.
[30] *Manual de Normas y Procedimientos, supra,* pág. 3.
[31] *Íd.*
[32] *Manual de Normas y Procedimientos, supra,* pág. 5.

*Reglamento* es que todas las personas institucionalizadas tengan un ente administrativo, en primera instancia, en el cual puedan presentar una solicitud de remedio, con el objetivo de reducir las diferencias que pueda haber entre la población correccional y el personal.[33] Además, de poder evitar o reducir los pleitos ante los tribunales.[34]

Mediante el *Reglamento 8583* se creó la *División de Remedios Administrativo (División)* con el motivo de atender las quejas o agravios que tengan los penados en contra del organismo del **DCR** y su personal. La Regla VI del antes mencionado *Reglamento* dispone que la *División* tendrá jurisdicción para ventilar las quejas sobre cualquier incidente o reclamación que comprenda las disposiciones del *Reglamento*.[35] En lo que respecta a las responsabilidades de los reclusos los remedios solicitados deben ser claros, concisos, honestos y de buena fe.[36]

El recluido que tenga una queja presentará una solicitud de remedio ante la *División*. La reclamación será examinada por un evaluador. Si el internado no está conforme, este puede interpelar una reconsideración ante el coordinador dentro un término de veinte (20) días a partir la notificación de la *Respuesta*.[37] En el caso de que el coordinador deniegue de plano o no conteste la solicitud de reconsideración podrá acudir en *revisión judicial* ante el Tribunal de Apelaciones en un término de quince (15) días.[38]

- III -

El señor **RIVERA TORRES** sostiene que la **DIVISIÓN DE REMEDIOS ADMINISTRATIVOS DEL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** se equivocó al confirmar la respuesta emitida en el caso ICG-1168-2024; interrumpir y negar el servicio y tratamiento de la Sección Programa Evaluación y Asesoramiento "SPEA" y/o vivir sin violencia conforme a derecho; en comenzar y dar de baja al

---

[33] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583* de 4 de mayo de 2015, pág. 1.
[34] *Id.*
[35] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583* de 4 de mayo de 2015, pág. 13.
[36] *Id.*, pág. 15.
[37] *Id.*, pág. 30.
[38] *Id.*, pág. 31.

recurrente del tratamiento por éste no saber leer y escribir, discriminando y prejuiciandolo por ello sabiendo éste (recurrente) saber leer y escribir, aunque con bajo grado; y al "posponer" su determinación de "pase extendido con monitoreo electrónico" por las razones expuestas siendo el **DCR** quien niega e impide los servicios.

Por otro lado, el **DCR** aduce que el reclamo administrativo se atendió de forma adecuada, directa y responsiva. Además, el **DRA** no es un organismo encargado de ordenar ni ofrecer las terapias de SPEA, de manera que su intervención en la *Solicitud de Remedio Administrativo* se limitaba precisamente a informar las razones por las cuales las terapias no se continuarían ofreciendo.

Conceptuamos que la *Respuesta* está sustentada en el trámite administrativo acompañada de una presunción de corrección. Más aún, no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa del **DCR,** en torno a la continuación o no de la participación en las terapias de SPEA por parte del señor **RIVERA TORRES**. Las alegaciones del señor **RIVERA TORRES** carecen de fundamento para derrotar la presunción de validez de la *Respuesta*. Tampoco se ha demostrado que la agencia administrativa haya actuado de manera arbitraria, irrazonable o ilegal, o afectado los derechos fundamentales del señor **RIVERA TORRES** o en qué manera, si alguna, se ha visto perjudicado por no participar grupalmente en la Sección Programa Evaluación y Asesoramiento "SPEA". La recomendación de la doctora Crespo Rodríguez es que fuese referido para tratamiento individualizado por salud correccional; su técnico socio penal escribió al Programa de Evaluación y Asesoramiento; y se está en espera de que se determine el curso de acción.[39] En consecuencia, no procede que sustituyamos el criterio administrativo por la nuestra, y hallamos que debemos abstenernos de intervenir con la *Respuesta*. Por ello, discernimos que el **DCR** no incidió en el(los) error(es).

---

[39] Inferimos que el **DCR** cumplirá con su obligación de ofrecer todos los servicios esenciales para la rehabilitación del señor **RIVERA TORRES.**

## - IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Respuesta al Miembro de la Población Correccional* (*Respuesta*) expedida el 13 de diciembre de 2024 por la **DIVISIÓN DE REMEDIOS ADMINISTRATIVOS DEL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**.

**Notifíquese inmediatamente a las partes: RAFAEL RIVERA TORRES y el DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR).**

**Notifíquese al(a la) señor(a) RAFAEL RIVERA TORRES quien se encuentra bajo la custodia del DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR): Institución Correccional Guerreo PO Box 3999 Edif. 6 C-1 Aguadilla, PR 0060 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones

La Jueza Cintrón Cintrón concurre con el resultado y hace constar las siguientes expresiones: "En atención a las particularidades que presenta el caso, entiendo se debió disponer del recurso con mayor celeridad".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones